**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| JUSTYNA JENSEN,<br><br>               *Plaintiff*,<br><br>   v.<br><br>MARYLAND CANNABIS<br>ADMINISTRATION AND WILLIAM<br>TILBURG,<br><br>               *Defendants.* | Civil Action No.: 1-24-CV-00273 |

**PLAINTIFF'S NOTICE OF APPEAL OF DENIAL OF MOTION**

**FOR PRELIMINARY INJUNCTION**

1

Notice is hereby given that plaintiff Justyna Jensen hereby appeals to the Unites States Court of Appeals for the Fourth Circuit from the District of Maryland's Memorandum Opinion Denying Motion for Temporary Restraining Order and Preliminary Injunction entered on February 27, 2024 as docket number 29 and the accompanying Order Denying Motion for Temporary Restraining Order and Preliminary Injunction entered on February 27, 2024 as docket number 30.  This case was first filed in the District of Maryland on January 26, 2024.

Dated: March 8, 2024

Respectfully submitted,

**FURMAN HONICK LAW**

By:   */s/ Allen E. Honick*
Allen E. Honick, Esq.
Bar No. 19822
*Attorneys for Plaintiff – Local Counsel*
11155 Red Run Blvd., Ste. 110
Owings Mills, MD 21117
(410) 844-6000
Email: allen@fhjustice.com

**JEFFREY M. JENSEN**

By:   */s/ Jeffrey M. Jensen*
Jeffrey M. Jensen, Esq.
*Pro Hac Vice – Admission Pending*
California Bar No. 262710
*Attorney for Plaintiff – Lead Counsel*
9903 Santa Monica Blvd. #890
Beverly Hills, CA 90212
(310) 909-7043
Email: jeff@jensen2.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| JUSTYNA JENSEN, | |
| | * |
| Plaintiff, | |
| | * |
| v. | |
| | *      Civil No. 24-0273-BAH |
| MARYLAND CANNABIS | |
| ADMINISTRATION AND WILLIAM | * |
| TILBURG, | |
| | * |
| Defendants. | |
| | * |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM OPINION

Before the Court is Plaintiff Justyna Jensen's motion for a temporary restraining order and preliminary injunction against Defendants the Maryland Cannabis Administration and William Tilburg, its acting director.   ECF 19.   The Court has reviewed Plaintiff's motion, ECF 19, Defendants' response in opposition, ECF 25, and Plaintiff's reply in support, ECF 26.   All motions included memoranda of law and exhibits.[1]   This Court held a hearing on this matter on February 22, 2024.   ECF 28.   For the reasons below, Plaintiff's motion is **DENIED**.

## I.     BACKGROUND

In 1970, Congress passed the Controlled Substances Act (CSA), which, among other things, prohibited the use, distribution, manufacturing, and possession of cannabis.   *See Gonzales v. Raich*, 545 U.S. 1, 11–13 (2005); *see also* Controlled Substances Act (CSA), 84 Stat. 1242, 21 U.S.C. § 801 *et seq*.   Cannabis, also referred to as marijuana, remains federally illegal.   *See*

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

*Gonzales*, 545 U.S. at 15; 21 U.S.C. § 801 *et seq.*; 21 C.F.R. § 1308.11(d).  Despite this federal ban, however, a majority of states have legalized medical marijuana use, and nearly half of all states (plus the District of Columbia and two United States territories) have legalized recreational marijuana use for adults.  *State Medical Cannabis Laws*, National Conference of State Legislatures (June 22, 2023), https://www.ncsl.org/health/state-medical-cannabis-laws [https://perma.cc/2QK6-MYFK] (hereinafter "*State Medical Cannabis Laws*").

In 2022, the citizens of Maryland voted to amend the Maryland Constitution to legalize recreational marijuana use by adults.  *See* Md. Const. art. XX § 1; *Official 2022 Gubernatorial General Election Results for Question 4*, Maryland State Board of Elections (Dec. 7, 2022) https://elections.maryland.gov/elections/2022/general_results/gen_detail_qresults_2022_4_1.htm [https://perma.cc/A9HC-E5BL].  Thereafter, on May 3, 2023, the Maryland General Assembly amended the Maryland Code to provide for, among other things, the issuing of recreational adult-use cannabis retail licenses and the creation of Defendant the Maryland Cannabis Administration to regulate the cannabis industry in the state.  H.B. 556, 2023 Leg., Ch. 254 (Md. 2023); S.B. 516, 2023 Leg., Ch. 255 (Md. 2023).

Under the new cannabis regulation scheme passed by the legislature, the first round of recreational-use cannabis retail licenses is to be issued by lottery to "social equity" applicants.[2] Md. Code Ann., Alcoholic Beverages and Cannabis ("Alc. Bev. & Cann.") § 36-404(d)(1).  A "[s]ocial equity applicant" is an applicant that:

(1) has at least 65% ownership and control held by one or more individuals who:

---

[2] Cannabis retailers that had previously dispensed medical marijuana, which was already legal in Maryland, were permitted to convert their existing licenses to combination recreational/medical licenses beginning on July 1, 2023.  Md. Code Ann., Alcoholic Beverages and Cannabis § 36-401(b).

(i) have lived in a disproportionately impacted area[3] for at least 5 of the 10 years immediately preceding the submission of the application;

(ii) attended a public school in a disproportionately impacted area for at least 5 years; or

(iii) for at least 2 years, attended a 4-year institution of higher education in the State where at least 40% of the individuals who attend the institution of higher education are eligible for a Pell Grant[.]

*Id.* § 36-101(ff).  The application process to enroll in the lottery for the first round of recreational cannabis licenses for social equity applicants began on September 7, 2023, and closed on December 12, 2023.[4]  ECF 25-1, at 9.  According to Plaintiff, the "the lottery [drawing] will likely occur in late February [2024]."  ECF 19-1, at 2.

Plaintiff is a citizen of California who has never lived in Maryland.  ECF 1, at 1.  She applied for Maryland's social equity lottery on November 6, 2023.  ECF 19-6, at 20.  Plaintiff based her application on the third eligibility prong of the lottery (the "Pell Grant provision"): her attendance at a 4-year institution where at least 40% of students were eligible for Pell Grants.  *Id.* at 17, 21–24; ECF 19-15, at 7.  In her application, Plaintiff certified that she did not meet the criteria for the first eligibility prong (living in a disproportionately impacted area), and she provided no information indicating that she met the second prong criteria (attending a public school in a disproportionally impacted area for five years).  ECF 19-6, at 17–24.  Plaintiff's application was rejected on December 13, 2023, because though more than 40% of students at the

---

[3] A "disproportionately impacted area" is "a geographic area identified by the Office of Social Equity that has had above 150% of the State's 10-year average for cannabis possession charges."  Alc. Bev. & Cann. § 36-101(r).

[4] Defendants would have the Court consider the application process as two independent steps: first, a "verification request" to certify that an applicant met the social equity criteria, and then the formal application itself, open only to those who successfully verified their eligibility.  ECF 25-1, at 9.  Given that the verification process was a necessary precursor to the formal application, however, the Court sees no reason to distinguish between these two steps for the purpose of legal analysis.  *See id.*

college she attended, California State University at Long Beach, were eligible for Pell Grants, the
university was in California, not Maryland.  ECF 19-15, at 7.  Plaintiff filed this suit thereafter.
ECF 1.  On February 6, 2024, Plaintiff filed the currently pending motion for a preliminary
injunction.  ECF 19.

Plaintiff claims that the Pell Grant provision and its implementing regulations
unconstitutionally discriminate against out-of-state residents under the dormant Commerce
Clause, and she seeks declaratory and injunctive relief.  ECF 1, at 5–7.  Specifically, Plaintiff seeks
an injunction preventing Defendants from running the lottery and issuing the resultant licenses
based on the existing criteria and a declaration that § 36-101(ff) of the Alcoholic Beverages and
Cannabis Title of the Maryland Code and its implementing regulations are unconstitutional.[5]  *Id.*
Plaintiff is now before the Court asking for a preliminary injunction to prevent Defendants from
issuing any licenses under the social equity lottery pending resolution of this case.  ECF 19, at 1.

## II.   <u>LEGAL STANDARD</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter
v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, at
689–90 (2008)).  "The purpose of a preliminary injunction is merely to preserve the relative
positions of the parties until a trial on the merits can be held."  *Univ. of Texas v. Camenisch*, 451
U.S. 390, 395 (1981).  To succeed on a motion for a preliminary injunction, a movant "must
establish [1] that [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable

---

[5] The exact scope of Plaintiff's requested relief has proved difficult to define.  Plaintiff's argument
is exclusively directed at the Pell Grant provision; her complaint requests that the entirety of § 36-
101(ff) be declared unconstitutional; and her counsel insisted that the *entire statute* should be
invalidated at the hearing before this Court. *See* ECF 19-15 (focusing exclusively on Pell Grant
provision); ECF 1, at 6–7 (requesting that Alc. Bev. & Cann. § 36-101(ff) and an associated
statutory provision and implementing regulations be declared unconstitutional).  The Court here
refers to the relief explicitly requested in Plaintiff's complaint.

harm in the absence of preliminary relief, [3] that the balance of equities tips in h[er] favor, and [4] that an injunction is in the public interest." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (alteration in original) (citing *Winter*, 555 U.S., at 20). "To secure a preliminary injunction, a plaintiff must 'make a "clear showing" that [she is] likely to succeed at trial, [but she] need not show a certainty of success.'" *Ass'n of Am. Publishers, Inc. v. Frosh*, 586 F. Supp. 3d 379, 388 (D. Md. 2022) (quoting *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013)).

## III.  **ANALYSIS**

This case comes before the Court amidst a backdrop of opposing case law from districts all over the country regarding the dormant Commerce Clause's application to the cannabis industry. Cannabis occupies a unique, paradoxical position in our nation right now, existing in a liminal legal space where its recreational use is legal at the state level in half the country and illegal in the other half; its medical use is legal in most of the country at the state level; and it remains illegal in all contexts at the federal level. *See State Medical Cannabis Laws*, *supra*; 21 U.S.C. § 801 *et seq*. Further complicating the issue, while marijuana use remains illegal at the federal level, the federal government has taken minor steps to mitigate the enforcement of the cannabis prohibition, particularly in the medical context. *See* Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, § 531, 136 Stat. 49 (2022) (providing that congressionally appropriated funds may not be used by the Department of Justice to prevent states from implementing their own laws legalizing the medical use of marijuana); *Peridot Tree WA Inc. v. Wash. State Liquor & Cannabis Control Bd.*, Civ. No. 3:23-06111-TMC, 2024 WL 69733, at *1 (W.D. Wash. Jan. 5, 2024) (describing history of discretionary enforcement of recreational marijuana prohibition at federal level—including a since-rescinded Attorney General memorandum directing United States Attorneys to consider state laws regarding marijuana when making charging decisions—and

noting the use of prosecutorial discretion in states with legalized cannabis use).  Thus, to say that the legal milieu surrounding cannabis is complex would be an understatement.

Amidst this legal uncertainty, Plaintiff now asks this Court for a preliminary injunction prohibiting the issuance of licenses from the social equity lottery, ECF 19, at 1, and, ultimately, for an injunction prohibiting the enforcement of the social equity lottery statutory provisions and their implementing regulations, as well as a declaration that the same are unconstitutional under the dormant Commerce Clause, ECF 1, at 6–7.  Plaintiff claims that the Pell Grant provision's limitation to only Maryland institutions where 40% of the student population is eligible for a Pell Grant discriminates against out-of-state residents and therefore violates the dormant Commerce Clause, and asserts that Plaintiff is entitled to a preliminary injunction to prevent the distribution of new licenses.  ECF 1, at 1–4; ECF 19-15, at 8–18.  Defendants counter that (1) Plaintiff lacks standing to bring this action; (2) Plaintiff does not meet the equitable requirements of a preliminary injunction, particularly due to Plaintiff's delay in bringing this case; (3) the dormant Commerce Clause does not apply to state recreational cannabis laws; and (4) even if the dormant Commerce Clause did apply, the Pell Grant provision does not violate it.  ECF 25-1, at 12–31.  The Court addresses each of these arguments in turn.

### A.    Plaintiff has standing.

Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit.  *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597 (2007).  It is the plaintiff's burden to establish standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To do so, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Id.* Here, Defendants claim that Plaintiff lacks injury and that the injury she alleges is not redressable.[6] ECF 25-1, at 12–15.

            1.   <u>Plaintiff has demonstrated injury.</u>

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. "[A]fter *Spokeo*, a plaintiff may not satisfy the strictures of Article III by alleging 'a bare procedural violation, divorced from any concrete harm.'" *Edmondson v. Eagle Nat'l Bank*, 344 F.R.D. 72, 76–77 (D. Md. 2023) (citing *Spokeo*, 578 U.S. at 341). "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'" *Carney v. Adams*, 592 U.S. 53, 58 (2020). Defendants suggest that Plaintiff lacks injury because, though she submitted a request to verify her social equity applicant status and was denied, she failed to submit a final application for the lottery.[7] *See* ECF 25-1, at 13 n.2.

When a plaintiff alleges unconstitutional discrimination in the awarding of a government contract or employment, they need not "translate [their] desire . . . into a formal application where that application would be merely a 'futile gesture.'" *Carney*, 592 U.S. at 66 (cleaned up) (quoting *Teamsters v. United States*, 431 U.S. 324, 365–66 (1977)). Instead, they need only demonstrate that they were "able and ready" to apply and that "a discriminatory policy" prevented them from doing so on equal footing with their competitors. *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993)).

---

[6] Defendants do not challenge that Plaintiff has pled causation, and the Court is satisfied that Plaintiff has met this element.

[7] This argument was addressed in some detail during the hearing before the Court.

Defendants' argument is based on their assertion that the lottery application actually consisted of two separate processes: first, the "verification request" to certify that an applicant met the social equity criteria, and then the formal application, which could be submitted only by those who successfully verified their social equity eligibility. ECF 25-1, at 9. Defendants asserted at the hearing that Plaintiff was not "ready and able" to apply for the lottery because she failed to submit all of the documentation that was required as part of the formal application. The Court is unpersuaded by this reasoning. Plaintiff and Defendants agreed at the hearing that Plaintiff was unable to *submit* the formal application without first receiving social equity applicant verification, even if she could have *begun* that application without the verification. Plaintiff was well aware that she would not receive social equity verification, and she was not required to begin an application that would have obviously been a "futile gesture" in order to establish injury. *See Carney*, 592 U.S. at 66 (holding that job applicants alleging discrimination need not submit application that would obviously be futile in order to establish injury so long as they are ready and able to apply). As was discussed at the hearing, Plaintiff is a successful retail cannabis professional who has applied for cannabis licenses in several states and was easily "ready and able" to provide the business plans and other documentation the application required, had such an endeavor not been obviously doomed to fail. That she did not take the time to complete an application she knew she would be unable to submit does not negate the injury she suffered when she was denied social equity applicant eligibility. Plaintiff has demonstrated injury.

2.  Plaintiff's injury is redressable.

"[T]he plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). To satisfy the requirements of standing, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Doe v. Va. Dep't of*

8

*State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). "The burden imposed by this requirement is not onerous. Plaintiffs 'need not show that a favorable decision will relieve [their] every injury.' Rather, plaintiffs 'need only show that they personally would benefit in a tangible way from the court's intervention.'" *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)). Declaratory and injunctive relief are appropriate to redress ongoing or future harm. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 407–08 (6th Cir. 2019) (explaining that damages are an appropriate remedy for completed, past harm, but injunctive and declaratory relief are appropriate when there is an "allegation of a real or immediate threat" of future or ongoing injury); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (explaining that injunctive relief is only available when there is a "real or immediate threat the plaintiff will be wronged" in the future).

Defendants argue that Plaintiff's injury is not redressable because even "[i]f the Court finds that the Pell Grant criterion is in violation of the dormant Commerce Clause and enjoins its enforceability, Plaintiff still is ineligible for the lottery because she does not qualify under either of the other two [social equity applicant] criteria." ECF 25-1, at 12. Other courts have applied similar logic in considering dormant Commerce Clause challenges to cannabis regulations. In *Variscite, Inc. v. Los Angeles*, the Central District of California held that the plaintiffs in that case lacked standing to seek a preliminary injunction because the plaintiffs failed to demonstrate redressability. Civ. No. 2:22-08685-SPG-SK, 2022 WL 18397510, at *5–7 (C.D. Cal. Dec. 8, 2022). That case centered around Los Angeles' social equity lottery for cannabis licenses, which required applicants to provide evidence of "a qualifying California Cannabis Arrest or Conviction" as well as evidence of either ten years residing in a "Disproportionately Impacted Area" (in

California or elsewhere) or "low income in the 2020 or 2021 calendar year." *Id.* at *2. The plaintiff in that case claimed that the "qualifying California Cannabis Arrest or Conviction" prong violated the dormant Commerce Clause as he had a cannabis arrest or conviction from Michigan that would have qualified had it occurred in California. *Id.* at *3. The court there held that the plaintiff lacked standing because he had not demonstrated that he met either of the other prongs required to enter the lottery, and a plaintiff "cannot establish either causation or redressability where another statutory provision not subject to challenge would cause the plaintiff to continue to suffer the same injury." *Id.* at *6 (citing *Orion Wine Imps., LLC v. Appelsmith*, 837 F. App'x. 585 (9th Cir. 2021)).

The Fourth Circuit has applied similar logic in a different constitutional context. In *Covenant Media of North Carolina, L.L.C. v. City of Monroe*, the Fourth Circuit considered a First Amendment challenge to the City of Monroe's sign ordinance that imposed three separate requirements on billboards in the city. 285 F. App'x 30, 32 (4th Cir. 2008). After determining that the first of the challenged requirements was constitutional, the court held that the plaintiffs lacked standing to bring challenges against the other requirements, as their proposed billboards would have been independently denied based on the first requirement, and therefore no redress was available. *Id.* at 36.

Plaintiff here is in a position that, at first glance, looks similar to those of the plaintiffs in the above cases. There is, however, one key difference: in both *Covenant Media* and *Variscite Inc.*, the plaintiffs there were challenging one provision of a larger statutory scheme as unconstitutional, but their applications were barred by other provisions that they had to meet *concurrently* with the challenged provision. *See Covenant Media of N.C., L.L.C.*, 285 F. App'x at 36 ("Because the permit applications were properly denied on the basis of the independently constitutional size restriction, the Appellants lack a redressable constitutional injury to support

10

their challenges to the location and spacing restrictions."); *Variscite, Inc.*, 2022 WL 18397510, at

*7 ("Plaintiffs have not shown that their alleged injury would likely be redressed by a favorable

decision from this Court . . . given that they still would not be eligible for SEIA verification due

to their failure to satisfy the requirements of the unchallenged provisions . . . ."). This rendered

the courts unable to redress those plaintiffs' injuries because their applications would have been

denied independently based on the concurrent criteria. *Covenant Media of N.C., L.L.C.*, 285 F.

App'x at 36; *Variscite, Inc.*, 2022 WL 18397510, at *7. Here, Plaintiff challenges one independent

provision of Maryland's cannabis lottery. ECF 1, at 5–7; Alc. Bev. & Cann. § 36-101(ff). Though

Plaintiff apparently would not qualify for the lottery under the other provisions,[8] those other

provisions were not the *reason* her application was denied; they merely foreclosed other alternative

avenues. The sole reason Plaintiff's application was denied and the sole source of the alleged

unconstitutional discrimination was the challenged provision.

Even more importantly, Plaintiff here does "not ask the Court to order Defendants to

include her in the lottery." ECF 26, at 4. Rather, Plaintiff asks only that she not be

"unconstitutionally excluded from [Maryland's] application program," regardless of whether she

is denied access on the merits of her application under the unchallenged provisions. *Id.* This is

relief the Court can grant. *See Peridot Tree, Inc. v. City of Sacramento*, Civ. No. 2:22-00289-

KJM-DB, 2022 WL 10629241, at *3 (E.D. Cal. Oct. 18, 2022) (finding that plaintiff had standing

to request preliminary injunction against cannabis license lottery under dormant Commerce Clause

---

[8] Plaintiff at no point argued that she would qualify for a license under one of the other provisions, either in her filings or during the hearing before the Court. *See* ECF 19-15; ECF 26 (making no mention of Plaintiff's qualification under the other provisions). Indeed, in Plaintiff's "verification request," she certified that she had no address to submit from a disproportionately impacted area, and the only academic transcripts she submitted were those from California State University at Long Beach. ECF 19-6, at 17–24.

because "equitable forms of relief would redress their alleged injury by preventing the City from giving any preference to current or former local residents"); *Variscite NY One, Inc. v. New York*, Civ. No. 122-1013-GLS-DJS, 2023 WL 1420662, at *3 (N.D.N.Y. Jan. 31, 2023) ("Variscite is not seeking a license from the court, but, rather, judgement restraining defendants from enforcing any portions of the Cannabis Law or Cannabis Regulations that favor New York residents over out-of-state residents, and a declaration that certain portions of the law and regulations violate the dormant Commerce Clause, relief which the court can provide." (internal citations omitted)).

Thus, Plaintiff's injury is redressable through the relief she seeks, and Plaintiff has standing to bring this challenge.

### B.    Plaintiff has satisfied the irreparable harm requirement.

"[T]he denial of a constitutional right, if denial is established, constitutes irreparable harm . . . ." *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987); *see also Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) ("Because there is a likely constitutional violation, the irreparable harm factor is satisfied."). The dormant Commerce Clause confers a right to the American people to "engage in interstate trade free from restrictive state regulation." *Dennis v. Higgins*, 498 U.S. 439, 448 (1991).

Here, Plaintiff argues that the challenged provision violates her constitutional rights under the dormant Commerce Clause to participate in interstate commerce on equal footing with Marylanders. ECF 19-15, at 15–17. Given the Fourth Circuit's clear precedent, a violation of that right would be an irreparable harm. Thus, should Plaintiff show that it is likely that the challenged statute does indeed violate her constitutional right under the dormant Commerce Clause, she will have demonstrated a likelihood of irreparable harm.

**C.    The balance of equities and the public interest weigh against the granting of the preliminary injunction.**

"When a plaintiff seeks preliminary injunctive relief against the Government, the balance of the equities and the public interest factors merge." *Coreas v. Bounds*, 451 F. Supp. 3d 407, 429 (D. Md. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009), and *Roe v. Dep't of Def.*, 947 F.3d 207, 230 (4th Cir. 2020)).  This is so because "the government's interest *is* the public interest" in such a case.  *Ass'n of Cmty. Cancer Ctrs. v. Azar*, 509 F. Supp. 3d 482, 501 (D. Md. 2020) (emphasis in original) (quoting *Pursuing Am. Greatness v. Fed. Elec. Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

Plaintiff argues that these factors weigh in her favor because the Fourth Circuit has held that "a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional.  If anything, the system is improved by such an injunction."  ECF 19-15, at 17–18 (*citing Leaders of a Beautiful Struggle*, 2 F.4th at 346).  While this may be the general rule, there are unique factors at play in this case that complicate the analysis.

First, Defendants argue that Plaintiff's delay in bringing this suit counsels against the balance of equities weighing in her favor.  ECF 25-1, at 15–17.  Other courts faced with similar facts have held as much.  The Seventh Circuit recently upheld a district court's finding that the balance of equities counseled against granting a preliminary injunction enjoining the issuance of cannabis retail licenses when the "plaintiffs had ample time and opportunity to challenge the Cannabis Act's residency-related criteria sooner, but they waited until the eleventh hour to file suit."  *Finch v. Treto*, 82 F.4th 572, 579 (7th Cir. 2023) (quotation marks and citation omitted).  District courts in New York and Washington have applied similar reasoning to find that delays in seeking preliminary injunctions against cannabis licensing laws indicated "a lack of urgency" and

therefore weighed against the issuance of the preliminary injunction. *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, Civ. No. 123-01599-AMN-CFH, 2024 WL 406490, at *14 (N.D.N.Y. Feb. 2, 2024); *Peridot Tree WA Inc.*, 2024 WL 69733, at *10.

Here, Plaintiff claims that she "learned about [Maryland's cannabis lottery] from someone who read about the program in an industry news source . . . around the time the social equity application verification period opened."[9]   ECF 26, at 6.   The verification period opened on September 7, 2023.   ECF 25-1, at 9.   Although Plaintiff's application was not rejected until December 13, 2023, Plaintiff was at least on notice that she would not qualify for the social equity lottery well before then, as Defendants published the list of schools that qualified (a list that did not include California State University at Long Beach) under the Pell Grant provision on September 1, 2023.   *Id.* at 16.   Thus, this information was available to Plaintiff as soon as she became aware of the lottery in September, and Plaintiff must have been aware of the criteria by November 6, 2023, at the latest, when she submitted her application.   *See* ECF 19-6, at 20.   Still, Plaintiff waited almost two months after submitting her doomed application—and almost four months after allegedly becoming aware of the program—to contact Defendants regarding the potential of a lawsuit; she did not file this litigation until January 26, 2024; and she did not file her motion for a preliminary injunction until February 6, 2024.[10]   ECF 19; ECF 25-1, at 16.   This can hardly be said to be a timeline of "remarkable speed," as Plaintiff asserts.   ECF 26, at 6.

---

[9] At the hearing on February 22, 2024, Plaintiff's counsel insisted that Plaintiff was unsure of exactly when she learned of Maryland's social equity lottery, saying that it could have been as late as November 2023.   He acknowledged that Plaintiff most likely learned of the lottery in September 2023, though, when the verification request process opened.   This is the date that the Court uses for the purpose of this analysis, as it is also the date reflected in Plaintiff's declaration attached to her reply.   ECF 26-1, at 2–3.

[10] To the extent that Plaintiff argues that her delay in bringing this suit was in part due to her seeking a pre-lawsuit settlement with Defendants, *see* ECF 26, at 3, other courts have recognized

While Plaintiff waited to file this suit, Defendants were processing applications, and individuals were applying for Maryland retail cannabis licenses. ECF 25-1, at 29–30. Defendants have dedicated hundreds of thousands of dollars and hundreds of staff hours to processing nearly 2,000 applications from individuals hoping for a license. ECF 25-1, at 16, 29–30.[11] Defendants' expenditure of time and resources contrasted with Plaintiff's unhurried filing schedule and complete lack of significant financial or other resources expended on the application strongly suggest that the balance of equities weighs against the granting of the requested injunction. *See id.* at 30.

This Court is also strongly persuaded by the District Court for the Western District of Oklahoma's reasoning that it is not the place of a federal court to facilitate federally prohibited activity. *See Original Invs., LLC v. Oklahoma*, 542 F. Supp. 3d 1230, 1234–35 (W.D. Okla. 2021)

---

that even if a plaintiff "offer[s] some justification for their delay," this does not necessarily negate the equitable concerns that accompany an eleventh-hour suit, *Variscite NY Four, LLC*, 2024 WL 406490, at *14. Plaintiff noted at oral argument that it would be unusual for a court to penalize counsel for seeking to resolve disputes outside of the courtroom. However, Plaintiff is a sophisticated litigant in the realm of these types of lawsuits and could have easily pursued settlement after the filing of her complaint and requested extensions of time as needed. Indeed, Plaintiff's counsel made an unusual effort to settle the case at the hearing by declaring that it was within Defendants' power to quickly end the case, presumably by providing his client with a license (or an invitation to participate in the lottery). As such, this argument is unpersuasive.

[11] As noted at the hearing, Defendants' estimate of costs do not take into account the significant efforts undertaken (and costs accrued) by applicants working swiftly to meet the applicable deadlines for a license. Plaintiff argues that costs incurred by her fellow lottery applicants are "the result of these [cannabis license] applicants investing money before obtaining a license, which they did at their own risk," and so these incurred costs should not weigh against Plaintiff. ECF 19-15, at 18 (alteration in original) (quoting *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021)). This argument pertains only to expenditures that applicants may have made in anticipation of receiving a license, such as renting a store front; it does not take into account the costs that applicants may have incurred in completing the application itself. Applicants to the lottery who are not as sophisticated in business matters as Plaintiff may very well have expended time and financial resources just to complete the lottery application. Thus, the costs incurred by these applicants cannot be so easily discounted.

(quoting *Cartlidge v. Rainey*, 168 F.2d 841, 845 (5th Cir. 1948)).  In *Original Investments*, the court declined to issue a preliminary injunction enjoining the state's residency requirement for medical marijuana use "[b]ecause the requested relief would facilitate [federally] criminal acts, [and] the court '[would] not lend its aid to the perpetration of criminal acts.'"  *Id.*

Here, as in *Original Investments*, the granting of a preliminary injunction based on the dormant Commerce Clause, according to Plaintiff's argument, would ultimately serve to encourage interstate participation in a federally illegal practice.  This Court declines to use its equitable power to encourage participation in activities that Congress has expressly prohibited.  The balance of equities and the public interest weigh against the granting of the injunction.

Because a preliminary injunction must satisfy all four *Winter* factors, the analysis could stop here and be complete.  *Centro Tepeyac*, 722 F.3d at 188.  However, for the sake of thoroughness, the Court will next turn to the likelihood of success on the merits.

**D.      Plaintiff has failed to demonstrate a likelihood of success on the merits.**

The Commerce Clause of the United States Constitution empowers Congress "[t]o regulate Commerce . . . among the several States."  U.S. Const. art I, § 8, cl. 3.  The dormant Commerce Clause is a judicially-created "negative implication" of the Constitution's Commerce Clause, which is "driven by concern about 'economic protectionism, that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."  *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273–74 (1988)).  "In cases involving the so-called dormant Commerce Clause, both interstate and foreign, the Federal Government has not affirmatively acted, and it is the responsibility of the judiciary to determine whether action taken by state or local authorities unduly threatens the values the Commerce Clause was intended to serve."  *Wardair Canada, Inc. v. Fla. Dep't of Revenue*,

477 U.S. 1, 7 (1986).  "The dormant Commerce Clause restrains 'the several States' by limiting 'the power of the States to erect barriers against interstate trade.'"  *McBurney v. Young*, 667 F.3d 454, 468–69 (4th Cir. 2012) (quoting *Dennis v. Higgins,* 498 U.S. 439, 446 (1991)), *aff'd*, 569 U.S. 221 (2013).

When a plaintiff challenges a law under the dormant Commerce Clause, courts ask first "whether [the] challenged law discriminates against interstate commerce."  *Davis*, 553 U.S. at 338 (citation omitted).  "A discriminatory law is 'virtually *per se* invalid,'" and can survive the challenge "only if it 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'"  *Id.* (quoting *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 99–101 (1994)).  "[N]ondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'"  *Oregon Waste Sys., Inc.*, 511 U.S. at 99 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

It is an open question whether the dormant Commerce Clause applies to the cannabis industry, given that cannabis is still federally illegal.  Courts around the country have considered challenges to cannabis regulations under the dormant Commerce Clause and have come to different results.  It will be helpful to recount some of the major points of each of these lines of reasoning as no courts in the Fourth Circuit have yet considered this question.

      1.   <u>The First Circuit held that the dormant Commerce Clause applied to the medical marijuana industry in</u> *Northeast Patients Group v. United Cannabis Patients and Caregivers of Maine.*

The only circuit to directly address the question of the dormant Commerce Clause's applicability to the cannabis industry is the First Circuit with its decision in *Northeast Patients Group v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2022).  In that case, the court considered a dormant Commerce Clause challenge to a Maine law which required

the "officers and directors of medical marijuana dispensaries operating in Maine to be Maine residents." *Id.* at 544 (citation omitted).  The defendants in that case argued that because cannabis, even medical marijuana, was federally illegal, there could be no lawful interstate market, and thus, the dormant Commerce Clause was inapplicable.  *Id.* at 547.

The First Circuit rejected this argument.  The court reasoned that there indeed was an interstate market for marijuana, medicinal and otherwise, regardless of whether it was legal.  *Id.* The court highlighted the Supreme Court's decision in *Gonzales v. Raich*, 545 U.S. at 18–19, wherein the justices expressly acknowledged that an interstate market for cannabis existed and upheld Congress' authority under the Commerce Clause to prohibit the possession, cultivation, and use of marijuana in a purely intrastate manner in a state where medical marijuana was legal. *Id.*  The First Circuit also pointed to Congress' passage of the Rohrabacher-Farr Amendment, which prevented the Department of Justice from using congressionally authorized funds to prevent states from implementing their own laws legalizing medical marijuana, as further support for the notion that a federally recognized interstate market for cannabis exists.  *Id.* at 547–48 (citing Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, § 531, 136 Stat. 49 (2022)).  Given the decision in *Gonzales* and the Rohrabacher-Farr Amendment, the court reasoned that "an interstate commercial market in medical marijuana must exist that the Commerce Clause can reach," and therefore, the dormant Commerce Clause must apply.  *Id.* at 548.

2.     District court decisions on the dormant Commerce Clause's applicability to the recreational cannabis industry have come to opposing conclusions.

A number of federal district courts throughout the country have considered constitutional challenges to state cannabis laws under the dormant Commerce Clause.  Many of these courts have considered challenges brought under the dormant Commerce Clause to state cannabis laws without conducting any explicit analysis of whether the dormant Commerce Clause should apply to state

18

cannabis laws.  *See, e.g., Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232, 239–40 (N.D.N.Y. 2022) (striking down a residency requirement in New York's cannabis licensing laws under the dormant Commerce Clause without conducting any explicit analysis of whether the dormant Commerce Clause applied in such a situation), *reconsideration denied*, Civ. No. 122-1013-GLS-DJS, 2023 WL 1420662 (N.D.N.Y. Jan. 31, 2023); *see also Variscite NY Four, LLC*, 2024 WL 406490, at *11 (collecting cases).  At least one court has chosen to abstain from deciding whether the dormant Commerce Clause applies to state cannabis laws pending a decision from its Circuit Court of Appeals.  *See Variscite, Inc.*, 2023 WL 3493557, at *1 (staying case pending appeal before Ninth Circuit).  Plaintiff points to no cases where a federal court has *explicitly* considered the impact of cannabis' federally illegal status in evaluating whether the dormant Commerce Clause applies to the *recreational* cannabis market and concluded that the dormant Commerce Clause does apply, nor is this Court aware of any such cases.  *See* ECF 19-15, at 15 (citing cases); *see also Variscite NY Four, LLC*, 2024 WL 406490, at *11 (identifying four of the cases cited by Plaintiff as cases where the "courts performed a dormant Commerce Clause analysis without directly addressing the threshold question of whether the dormant Commerce Clause applies to a state licensing program for cannabis."); *Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177, 183–84 (D. Me. 2021) (considering only medical marijuana industry); *Attitude Wellness, LLC v. Vill. of Pinckney*, 606 F. Supp. 3d 624, 630–32 (E.D. Mich. 2022) (applying dormant Commerce Clause to cannabis industry without explicitly considering whether the dormant Commerce Clause applies to federally illegal industries).

Yet other courts across the country have held that the dormant Commerce Clause does not apply to state laws regarding recreational marijuana.  These courts have nearly universally reasoned that the dormant Commerce Clause does not apply to the recreational marijuana market

because Congress has specifically made that market illegal at the federal level. *See Peridot Tree WA Inc.*, 2024 WL 69733, at *1 ("[T]he dormant Commerce Clause does not protect a right to participate in an interstate market that Congress has declared illegal."); *Variscite NY Four, LLC*, 2024 WL 406490, at *12 ("Given that the national market for cannabis is illegal, it would make little sense to apply the dormant Commerce Clause to New York's cannabis licensing scheme."); *Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, Civ. No. C20-5661 BHS, 2023 WL 1798173, at *11 (W.D. Wash. Feb. 7, 2023) ("The dormant Commerce Clause does not apply to federally illegal markets, including Washington's cannabis market and, thus, it does not apply to Washington's residency requirements."), *appeal dismissed*, No. 23-35162, 2023 WL 3884102 (9th Cir. Apr. 11, 2023).

        3.    <u>This Court holds that the dormant Commerce Clause does not apply to the recreational cannabis industry.</u>

Though Plaintiff would have this Court extrapolate from the First Circuit majority's opinion in *Northeast Patients Group* that the dormant Commerce Clause applies to the recreational marijuana market as well as the medical marijuana market, this Court declines to do so. The First Circuit's decisions are not binding on this Court, and *Northeast Patients Group* dealt exclusively with the medical marijuana market, which differs from the recreational cannabis market in important ways. While there is undeniably an interstate market for recreational cannabis, the First Circuit's observation that Congress has acknowledged an interstate market for medical marijuana through the passage of the Rohrabacher-Farr Amendment has no applicability to this case, as Congress has passed no analogous provision relating to recreational cannabis.[12] *Peridot Tree WA,*

---

[12] Plaintiff argued at the hearing before this Court that the fact that former Attorney General Merrick Garland testified during his Senate confirmation hearing that he would deprioritize marijuana prosecutions in states that had legalized cannabis use and was then confirmed by the Senate equates to Congressional action on par with the passage of the Rohrabacher-Farr Amendment. *See Confirmation Hearing on the Nomination of Hon. Merrick Brian Garland to be*

*Inc.*, 2024 WL 69733, at *8; *Variscite NY Four, LLC*, 2024 WL 406490, at *1.  Thus, "[t]o the extent that *Northeast Patients Group* hinges on the impact of the Rohrabacher-Farr Amendment, this case is distinguishable."  *Peridot Tree WA, Inc.*, 2024 WL 69733, at *8.

Though it is admittedly a close call, this Court now joins with those courts across the country that have found that the dormant Commerce Clause does not apply to state recreational cannabis laws.  In so doing, this Court finds Judge Gelpí's dissent in *Northeast Patients Group* particularly persuasive.  As Judge Gelpí said, there may be an interstate market in recreational cannabis, but the fact this market is illegal makes it fundamentally distinct form interstate markets for other goods and renders it "constitutionally different in kind."  *Northeast Patients Grp.*, 45 F.4th at 558–59 (Gelpí, J., dissenting).  The dormant Commerce Clause seeks to "preserve a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors" because such an unencumbered market is presumably in the public interest, but this goal is not served by encouraging such a market for a good that Congress has already expressly declared to be illegal and against the public interest.  *Id.* (Gelpí, J., dissenting) (citing *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997)).  Put simply, it defies common sense to find that the dormant Commerce Clause, drawn from Congress' power to regulate interstate commerce, prevents the states from passing laws which inhibit a market which Congress has already declared prohibited.  As the District Court for the Northern District of New York explained, applying the dormant Commerce Clause to the recreational cannabis market

---

*Attorney General of the United States Before the S. Comm on the Judiciary*, 117th Cong. 493 (2021).  While the Court credits Plaintiff's argument that the Department of Justice's use of its discretion to refrain from focusing its prosecution efforts on cannabis has led to significantly reduced legal consequences for recreational as well as medical marijuana activities, the express passage of a piece of legislation by Congress is not the same as a non-binding sentiment expressed by an executive branch officer in a congressional hearing.

"would only encourage out-of-state participation in the [in-state] cannabis market, which would be contrary to Congress' exercise of Commerce Clause power in enacting the [Controlled Substances Act]." *Variscite NY Four, LLC*, 2024 WL 406490, at *12.

This conclusion is further bolstered by an additional logical inconsistency that would result from the dormant Commerce Clause's application to the federally illegal cannabis market.  It is established that Congress can authorize states to discriminate against interstate commerce.  *See S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87–88 (1984) (explaining that "Congress may redefine the distribution of power over interstate commerce by permitting the states to regulate the commerce in a manner which would otherwise not be permissible." (internal citation omitted) (cleaned up)).  If the dormant Commerce Clause applies to recreational cannabis laws, however, the only way Congress could so authorize the states would be to "speak out of both sides of its mouth on this issue, simultaneously illegalizing marijuana while affirmatively granting states the power to 'burden interstate commerce in a manner which would otherwise not be permissible.'" *Northeast Patients Grp.*, 45 F.4th at 559 (Gelpí, J., dissenting) (quoting *New England Power Co. v. New Hampshire*, 455 U.S. 331, 341 (1982)).  This contradiction further supports a finding that the dormant Commerce Clause does not apply to the federally illegal recreational cannabis market.

The Court is sympathetic to Plaintiff's overarching point that the federal government has not prioritized the prosecution of marijuana crimes.   Indeed, even a brief review of recent history yields a patchwork of executive branch declarations, statements, and even pardons attempting to establish a workable framework for the co-existence of the CSA's flat prohibition on the sale, production, or use of cannabis and the many states and territories whose statutory schemes hold

differently.[13]  *See, e.g.*, *United States v. Dayi*, 980 F. Supp. 2d 682, 686–87 (D. Md. 2013) (charting

changes in federal enforcement of marijuana laws).   Moreover, the Department of Justice's use of

its discretion to refrain from focusing its prosecution efforts on cannabis has led to significantly

reduced legal consequences for recreational marijuana activities.    *See, e.g., Quick Facts:*

*Marijuana   Trafficking   Offenses*,   United   States   Sentencing   Commission,   1   (2023)

(https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-

facts/Marijuana_FY22.pdf)  [https://perma.cc/6NPR-XSTF]  (hereinafter  "*Marijuana Trafficking*

*Offenses*") (noting that "marijuana trafficking offenses have decreased by 61.9% since [] 2018").

But none of this equates to the legalization of the drug, or even tacit Congressional approval on

---

[13] Following years of non-enforcement of the CSA against state-licensed medical marijuana operations, Deputy Attorney General James Cole responded to successful ballot initiatives legalizing recreational marijuana sales in Colorado and Washington State by issuing a memorandum entitled "Guidance Regarding Marijuana Enforcement" (the "Cole Memo") which extended non-enforcement to "marijuana traffickers—even large-scale, for-profit commercial enterprises," so long as "they comply with state laws and regulations and do not fall awry of [] eight federal enforcement interests [outlined in the Cole Memo]."   *Dayi*, 980 F. Supp. 2d at 687. The Cole Memo was rescinded by Attorney General Jeff Sessions in 2018.  *Brinkmeyer*, 2023 WL 1798173, at *2.   Attorney General William Barr testified during his Senate confirmation hearing that he would deprioritize marijuana prosecutions in states that had legalized cannabis use.  *See Confirmation Hearing on the Nomination of Hon. William Pelham Barr to be Attorney General of the United States Before the S. Comm on the Judiciary*, 116th Cong. 65 (2019).  And as Plaintiff noted at last week's hearing, Attorney General Merrick B. Garland stated at his confirmation hearing in 2021 that "it does not seem to me a useful use of limited resources that we have to be pursuing prosecutions in States that have legalized and that are regulating the use of marijuana, either medically or otherwise."   *See Confirmation Hearing on the Nomination of Hon. Merrick Brian Garland to be Attorney General of the United States Before the S. Comm. On the Judiciary*, 117th Cong. 493 (2021).  Further, on October 6, 2022, President Biden pardoned all individuals who committed the offense of simple possession of marijuana in violation of 21 U.S.C. § 844 or D.C. Code § 48-904.01(d)(1).  Proclamation No. 10467, 87 Fed. Reg. 61441, 61441–42 (Oct. 6, 2022).

par with the Rohrabacher-Farr Amendment.[14]  As such, the federal prohibition of the recreational cannabis market remains determinative.

Because this Court finds that the dormant Commerce Clause does not apply to the recreational cannabis industry, Plaintiff is not likely to succeed on the merits of her claim, and it is not necessary to analyze whether the challenged provision is discriminatory.[15]  Still, having come to this conclusion, the Court acknowledges the changing nature of the legal landscape around cannabis and the difficulties both parties faced in making arguments on a novel issue before this Court.

---

[14] A cursory review of data available from the United States Sentencing Commission reflects that in fiscal year 2022, "4.1% of [federal] drug trafficking cases involved marijuana."  *Marijuana Trafficking Offenses, supra*.  Nearly 86% of these offenders were sentenced to a term of imprisonment.  *Id.*  And convictions for the sale and distribution of marijuana continue to "score" criminal history points under the United States Sentencing Guidelines.  *See* U.S. Sent'g Guidelines Manual § 4B1.2 (U.S. Sent'g Comm'n) (defining "controlled substance offense" in a manner that includes marijuana offenses).

[15] An additional reason Plaintiff is unlikely to succeed on the merits of her claim is that the relief she seeks is overbroad.  Despite the complaint requesting that the Court declare specific enumerated provisions of the identified statutes and regulations to be unconstitutional, *see* ECF 1, at 6, Plaintiff's counsel insisted at the hearing before this Court that the Court only had the power to declare the entirety of the identified statutes as unconstitutional, rather than just the challenged provisions.  This is incorrect.

The Supreme Court has made clear that the preference is for courts to "sever [a statute's] problematic portions while leaving the remainder intact."  *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006) (citing *United States v. Booker*, 543 U.S. 220, 227–29 (2005)).  "Indeed, [a court] must retain those portions of the [law] that are (1) constitutionally valid, (2) capable of 'functioning independently,' and (3) consistent with [the legislature's] basic objectives in enacting the statute."  *Booker*, 543 U.S. at 258–59 (citing *Regan v. Time, Inc.*, 468 U.S. 641, 652–53 (1984) (plurality opinion), and *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)).  Because a court must narrowly tailor its relief to target only the unconstitutional provisions of a statute so as to preserve the intent of the legislature as much as possible, *see Ayotte*, 546 U.S. at 328–29, it would not be appropriate to declare unconstitutional the entire statute at issue here, when only one component of one subpart is challenged.  As such, Plaintiff's requested relief as stated by Plaintiff's counsel at the hearing is unlikely to be granted.

E.      **Plaintiff's request for an injunction pending appeal is denied.**

At the hearing before this Court, Plaintiff's counsel asked that, if the Court decided to deny

Plaintiff's motion for a preliminary injunction, the Court order Defendants to refrain from issuing

the social equity lottery licenses pending appeal of this case.  The Court initially suggested that

additional briefing might be ordered on this question, but upon further reflection, more briefing is

unnecessary.

Plaintiff's request is construed as a motion for an injunction pending appeal under Federal

Rule of Civil Procedure 62(d).  "[B]ecause similar concerns arise whenever a court order may

allow or disallow anticipated action before the legality of that action has been conclusively

determined," the standard for granting a motion under Rule 62(d) is the same as the preliminary

injunction standard.  *Nken*, 556 U.S. at 434; *see also Goldstein v. Miller*, 488 F. Supp. 156, 171–

72 (D. Md. 1980).  In seeking this injunction pending appeal, Plaintiff asks for the same relief

requested in her motion for a preliminary injunction: that Defendants be enjoined from issuing

cannabis retail licenses through the social equity lottery.  Thus, for the reasons above, the

preliminary injunction factors do not weigh in favor of issuing the injunction pending appeal.  *See*

*Mahmoud v. McKnight*, Civ. No. DLB-23-1380, 2023 WL 5487218, at *28 (D. Md. Aug. 24, 2023)

(denying motion for injunction pending appeal of denial of preliminary injunction when relief

requested was the same as that of the preliminary injunction), *appellate court denial of injunction*

*pending appeal*, No. 23-1890 (4th Cir. Sept. 29, 2023), ECF 50.  The motion is denied.

IV.    <u>**CONCLUSION**</u>

Because Plaintiff has not demonstrated that she is likely to succeed on the merits of her

claim and because the balance of equities and the public interest weigh against the granting of

the requested preliminary injunction, Plaintiff's motion for a preliminary injunction, ECF 19, is

**DENIED**.  Plaintiff's request for an injunction pending appeal is **DENIED**.

Dated: <u>February 27, 2024</u>                          <u>                   /s/                   </u>
                                                        Brendan A. Hurson
                                                        United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| JUSTYNA JENSEN, | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 24-0273-BAH |
| MARYLAND CANNABIS | | |
| ADMINISTRATION AND WILLIAM | * | |
| TILBURG, | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>ORDER</u>

For the reasons stated in the accompanying memorandum opinion, it is hereby ORDERED

that:

(1) Plaintiff's motion for a temporary restraining order and preliminary injunction, ECF 19, is

**DENIED**; and

(2) Plaintiff's oral motion for an injunction pending appeal is **DENIED**.

Dated: <u>February 27, 2024</u>
                                                        _____/s/_____

                                                        Brendan A. Hurson
                                                        United States District Judge