**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1216

JUSTYNA JENSEN,

        Plaintiff – Appellant,

    v.

MARYLAND CANNABIS ADMINISTRATION; WILLIAM TILBURG,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Brendan A. Hurson, District Judge. (1:24-cv-00273-BAH)

Argued: January 28, 2025                            Decided: September 2, 2025

Before NIEMEYER, BENJAMIN and BERNER, Circuit Judges.

Affirmed by published opinion. Judge Benjamin wrote the opinion, in which Judge Niemeyer and Judge Berner joined.

**ARGUED:** Jeffrey Mark Jensen, JEFFREY M. JENSEN, PC, Beverly Hills, California, for Appellant. Joshua Ryan Chazen, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** Anthony G. Brown, Attorney General, Heather B. Nelson, Assistant Attorney General, James N. Tansey, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

DEANDREA GIST BENJAMIN, Circuit Judge:

A cannabis entrepreneur brought this action seeking a declaration that a portion of the Maryland Code regulating cannabis business licensing discriminates against non-Maryland residents in violation of the Dormant Commerce Clause. She also sought an injunction to stop the licensing process, which the district court denied. Because the challenged portion of the licensing process is not discriminatory, we affirm.

I.

A.

1. Historical Context

The history of marijuana regulation in the United States is long and varied. As part of federal government's efforts in the "war on drugs,"[1] Congress, "prompted by a perceived need to consolidate the growing number of piecemeal drug laws and to enhance federal drug enforcement powers," passed the Comprehensive Drug Abuse Prevention and Control Act in 1970. *Gonzales v. Raich*, 545 U.S. 1, 12 (2005) (citing 84 Stat. 1238 (1970)). Title II of the Act, the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, sought to "conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." *Id.* In relevant part, the CSA classifies marijuana as a Schedule I substance and prohibits its use, distribution, and possession. *See* 21 U.S.C. §§ 812(c)(10), 841(a)(1), 844(a). While

---

[1] *See Gonzales v. Raich*, 545 U.S. 1, 10 (2005) ("Shortly after taking office in 1969, President Nixon declared a national 'war on drugs.' ") (citing D. Musto & P. Korsmeyer, The Quest for Drug Control 60 (2002)).

2

marijuana remains federally illegal, states around the county have taken steps to legalize medical and recreational use of marijuana. *See State Medical Cannabis Laws*, National Conference of State Legislatures (June 27, 2025), https://perma.cc/HE68-FLSH.

### 2. Recreational Marijuana in Maryland

#### a. Maryland Law

In 2022, Maryland citizens voted to amend the Maryland Constitution to legalize adult-use recreational marijuana. Brian Witte, *Maryland voters approve recreational marijuana legalization*, AP News (Nov. 9, 2022, at 12:33 ET), https://perma.cc/R2FD-V5D4; Md. Const. art. XX, § 1. On May 3, 2023, Governor Wes Moore approved the Cannabis Reform Act, which, in relevant part, established the Maryland Cannabis Administration (the "Administration") and set forth a regulatory and licensing scheme for adult-use cannabis. H.B. 556, 2023 Leg., Ch. 254 (Md. 2023). The Act also established an Office of Social Equity—an independent office within the Administration tasked, in part, with "promot[ing] and encourag[ing] full participation in the regulated cannabis industry by people from communities that have previously been disproportionately impacted by the war on drugs in order to positively impact those communities." *Id.* § 1-309.1(A)(2), (D)(1). The Administration and the cannabis business licensing process are governed by the Alcoholic Beverages and Cannabis section of the Maryland Code. Md. Code Ann., Alc. Bevs. & Cannabis §§ 36-101–36-1507. The Administration is responsible for "solicit[ing], evaluat[ing], and issu[ing] or deny[ing] applications for cannabis licenses and cannabis registrations, including . . . licenses to operate a cannabis business in accordance with this title[.]" *Id.* §§ 36-201, 36-202(a)(4).

3

b. Cannabis Business Licensing in Maryland

To address the social inequities within the cannabis industry, the Administration was required to "conduct extensive outreach to small, minority, and women business owners and entrepreneurs who may have an interest in applying for a cannabis license before accepting and processing cannabis license applications." *Id.* § 36-404(b)(1)(i). The Administration also "connect[ed] potential social equity applicants with the Maryland Office of Social Equity." *Id.* § 36-404(b)(1)(i) & (ii). A "social equity applicant" is an applicant that

> has at least 65% ownership and control held by one or more individuals who: (i) have lived in a disproportionately impacted area for at least 5 of the 10 years immediately preceding the submission of the application; (ii) attended a public school in a disproportionately impacted area for at least 5 years; or (iii) for at least 2 years, attended a 4-year institution of higher education in the State where at least 40% of the individuals who attend the institution of higher education are eligible for a Pell Grant; or . . . meets any other criteria established by the Administration.

*Id.* § 36-101(ff). The qualifying schools under the third criterion are Bowie State University, Coppin State University, Morgan State University, University of Baltimore, University of Maryland Eastern Shore, and Washington Adventist University. Maryland Office of Social Equity, Maryland higher education institutions where at least 40% enrollees have utilized a Pell Grant (2012–2021), https://perma.cc/G79U-SK38.

The Administration contracted with Creative Services, Inc. ("CSI") to verify an applicant's social equity application eligibility through a verification process separate from, and prior to, the license application. Once applicants completed the social equity

4

verification and the license application, they were entered into a lottery, from which the Administration selected applications to grant. Alc. Bevs. & Cannabis § 36-404(d)(1). Licenses were granted in rounds. *Id.* § 36-404(b)(1)(iv). The first round was limited to social equity applicants and restricted the number of licenses the Administration was permitted to issue. *Id.* § 36-404(d)(1).

### 3. Justyna Jensen

Justyna Jensen is a California citizen who has never lived in Maryland. J.A. 011 ¶ 1.[2] In November 2023, Jensen submitted a request to CSI to verify her status as a social equity applicant. In her social equity application, Jensen indicated that she did not have an address located in a disproportionately impacted area. *Id.* 62–64. Nor did she provide any information that she attended a public school in a disproportionately impacted area for five years. *Id*. Instead, Jensen claimed social equity applicant eligibility based on her attendance at California State University, Long Beach ("CSU Long Beach"), which provided her transcript. *Id.* 014 ¶ 15, 62, 65–69. At least 40% of CSU Long Beach's student body are eligible for a Pell Grant. *Id.* 014 ¶ 15. Shortly thereafter, CSI called Jensen "for additional information," but Jensen "was unable to provide . . . sufficient information to proceed with the validation." *Id.* 052.

Following the call with CSI, the Administration sent Jensen a letter informing her that CSI had been unable to verify her eligibility as a social equity applicant, and that unless

---

[2] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers for citations to the J.A. refer to the "J.A. #" pagination. Page numbers for citations to the parties' briefs refer to the system-generated pagination.

5

she took further action to demonstrate eligibility, she would be ineligible for an application in the first round of licensing. *Id.* 208. A few weeks later, the Administration sent Jensen another letter informing her that CSI had been unable to verify her eligibility. *Id.* 82. As such, she could not be associated with an application in the first round of licensing that would provide her more than 35% ownership share in a prospective business. *Id.* Jensen did not submit an application for a cannabis license, nor was she listed on any other application that the Administration received. *Id.* 120 ¶ 21.

B.

Jensen filed a complaint against the Administration and William Tilburg, its acting director (collectively, "the Administration"), raising a claim under the Dormant Commerce Clause pursuant to 42 U.S.C. § 1983, and a claim for Declaratory Relief pursuant to 28 U.S.C. § 2201. Shortly thereafter, Jensen filed a motion for a temporary restraining order and preliminary injunction. After a motion hearing, the district court denied the motion and a subsequent oral request for an injunction pending appeal. This interlocutory appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

II.

"We review a district court's denial of a preliminary injunction for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (citing *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 171 (4th Cir. 2019)). "A court abuses its discretion in denying preliminary injunctive relief when it rests its decision

6

on a clearly erroneous finding of a material fact, or misapprehends the law with respect to underlying issues in litigation." *Id.* (quoting *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 171) (cleaned up). Although our review is deferential, "[w]e are, of course, entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." *United States v. McHan*, 386 F.3d 620, 623 (4th Cir. 2004) (quoting *Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003)); *Moore v. Equitrans, L.P.*, 27 F.4th 211, 225 (4th Cir. 2022).

### III.

"A preliminary injunction is an extraordinary remedy." *Leaders of a Beautiful Struggle*, 2 F.4th at 339 (citing *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 170–71). A plaintiff seeking a preliminary injunction can only prevail if she shows that (1) she is "likely to succeed on the merits"; (2) she is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) the "balance of equities tips in [her] favor,"; and (4) "an injunction is in the public interest." *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "Denying a preliminary injunction only takes the rejection of a single factor." *N. Va. Hemp and Agric., LLC v. Virginia*, 125 F.4th 472, 497 (4th Cir. 2025) (quoting *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 544 (4th Cir. 2023)) (cleaned up).

### A.

Jensen argues that despite marijuana being federally illegal, the Dormant Commerce Clause applies to the cannabis industry. Appellant's Br. (ECF No. 18) at 19–20, 26, 34–

7

36 (hereinafter, "Opening Br."). Under this theory, Jensen argues that the in-state institution of higher education criterion discriminates against non-Maryland residents both facially and practically in violation of the Dormant Commerce Clause. *See id.* at 14, 47; *see* Reply Br. (ECF No. 23) at 15–20. She argues that the qualifying institutions primarily serve Maryland residents, and that non-resident students are more likely to become Maryland residents after completing school—rendering the criterion discriminatory in practice. *Id.*

The Administration argues that the Dormant Commerce Clause does not apply to the recreational cannabis market, which is illegal under the Controlled Substances Act. Appellee's Br. (ECF No. 20) at 20, 22, 24–25 (hereinafter, "Resp. Br."). In any case, even if the Dormant Commerce Clause does apply, the Administration argues that the challenged criterion does not favor Maryland residents. *Id.* at 31–32.

We agree with the Administration.

1.

A plaintiff seeking a preliminary injunction is required, in part, to show a likelihood of success on the merits of the claim. *Winter*, 555 U.S. at 20. This showing "need not establish a 'certainty of success,' " but it must be "clear . . . that [the plaintiff is] likely to succeed at trial." *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) (quoting *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017)).

2.

The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States[.]" U.S. Const. art. I, § 8, cl. 3. The Commerce

Clause gives Congress the authority to (1) "regulate the channels of interstate commerce," (2) "regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce," and (3) "regulate activities that substantially affect interstate commerce." *Gonzales*, 545 U.S. at 16–17 (citing *Perez v. United States*, 402 U.S. 146, 150 (1971)). The affirmative authority granted to Congress by the Commerce Clause "implies a 'negative' or 'dormant' constraint on the power of the States to enact legislation that interferes with or burdens interstate commerce." *N. Va. Hemp and Agric.*, 125 F.4th at 496 (quoting *Brown v. Hovatter*, 561 F.3d 357, 362 (4th Cir. 2009)) (cleaned up). "This 'negative implication' of the Commerce Clause is often called the Dormant Commerce Clause." *Id.* (quoting *Sandlands C&D LLC v. Cnty. of Horry*, 737 F.3d 45, 51 (4th Cir. 2013)).

The Dormant Commerce Clause "prevents the States from adopting protectionist measures and thus preserves a national market for goods and services." *Tenn. Wine and Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019) (citing *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988)). Under the Dormant Commerce Clause, "if a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to 'advance a legitimate local purpose.' " *Id.* at 518 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008)) (cleaned up). "This antidiscrimination principle—preventing state protectionism designed to benefit in-state economic interests by burdening out-of-state competitors—is at the 'very core' of the Court's Dormant Commerce Clause jurisprudence." *N. Va. Hemp and Agric.*, 125 F.4th at 496 (citing *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023)).

9

When considering a Dormant Commerce Clause claim, "we first ask if the state law discriminates against interstate commerce." *Id.* (citing *Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 567 (4th Cir. 2005)). Discrimination in this context "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* (quoting *United Haulers Ass'n, Inc. v. Oneida Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007)). If the challenged statute is not discriminatory, we proceed to the second inquiry under the Dormant Commerce Clause, commonly called the *Pike* test, and ask "whether the state law unjustifiably burdens the interstate flow of articles of commerce." *McBurney v. Young*, 667 F.3d 454, 468 (4th Cir. 2012) (first citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970); and then quoting *Brown*, 561 F.3d at 363) (cleaned up). Under the *Pike* test, "the challenged law 'will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Brown*, 561 F.3d at 363 (quoting *Pike*, 397 U.S. at 142). When a "state regulation applies equally to in-state and out-of-state interests," it "does not offend the Dormant Commerce Clause." *N. Va. Hemp and Agric.*, 125 F.4th at 497.

3.

Assuming without deciding, for the sake of argument, that the Dormant Commerce Clause did govern the recreational marijuana market, Jensen's claim would still fail for one glaring reason: the challenged in-state institution of higher education criterion is not discriminatory. *Anyone* from *any state* can qualify under any of the criteria of a social equity applicant—including the in-state institution requirement. That the qualifying

10

universities are in Maryland does not require Maryland residency. A non-Maryland resident could qualify under this criterion by attending one of the qualifying universities. On the contrary, an applicant who did not attend a qualifying university would not become eligible under this criterion by becoming a Maryland resident. Thus, this criterion is not discriminatory against non-Maryland residents.

Nor is the in-state institution criterion a residency preference or requirement. Jensen cites cases around the country addressing cannabis licensing—but to no avail. Each of those cases is factually distinct and so inapposite. For example, in *NPG, LLC v. City of Portland, Maine*, the district court granted a preliminary injunction and enjoined the City of Portland from applying point-based licensing criteria that awarded additional points to residents. No. 2:20-cv-00208-NT, 2020 WL 4741913, at *2 (D. Maine Aug. 14, 2020). *Finch v. Treto* similarly addressed a point-based licensing system that favored longtime Illinois residents. 82 F.4th 572, 575 (7th Cir. 2023). And in *Peridot Tree, Inc. v. City of Sacramento*, the licensing program at issue required City of Sacramento residency. No. 3:23-CV-06111-TMC, 2024 WL 69733, at *2 (W.D. Wash. Jan. 5, 2024), *appeal dismissed*, No. 24-209, 2024 WL 5318288 (9th Cir. June 21, 2024). The Administration's in-state institution criterion is a far cry from these residency preferences and requirements.

Jensen's speculations about the demographics of the qualifying institutions and the trajectories of non-resident students also fail. Finding this criterion discriminatory would first require us to assume that students at qualifying universities in the last two years, and as far back as can be reasonably assessed, consist primarily of Maryland residents. We would then have to assume that non-resident students are more likely to become Maryland

11

residents by virtue of having attended one of the qualifying institutions. And finally, we would have to assume that these speculations, taken together, render the in-state institution criterion, either on its face, or in practice, discriminatory. We make no such assumptions.

Applying the criteria to Jensen, her California residency did not hinder her from qualifying as a social equity applicant. Jensen, California residency notwithstanding, would have been eligible to apply for a cannabis license as a social equity applicant if she had lived in a disproportionately impacted area for at least five of the ten years immediately preceding the submission of her application. So too if she had attended a public school in a disproportionately impacted area for at least five years. Whether the disproportionately impacted area was in California or Maryland would be of no consequence. If Jensen had attended a qualifying university for at least two years, she would have also been eligible—again regardless of her California residency. And since she did not attend a qualifying university, she would not have gained eligibility under this criterion by becoming a Maryland resident. Under any of the criteria, including the in-state institution criterion challenged here, Jensen could have been a resident of Maryland or a resident of any other state and have been eligible. She simply didn't qualify.

Because the challenged criterion here would not be discriminatory, regardless of whether the Dormant Commerce Clause applies to the growing cannabis market, Jensen has failed to demonstrate a likelihood of success on the merits.[3] The district court therefore

---

[3] We leave the question of whether the Dormant Commerce Clause applies to the marijuana market for another day. Our decision is strictly limited to whether the challenged criterion is discriminatory—which it is not.

12

did not abuse its discretion in finding that this factor did not weigh in her favor, albeit for other reasons.[4]

B.

When a district court denies injunctive relief based on its analysis of a single *Winter* factor without fully considering the remaining factors, a court of appeals must "perform [its] own assessment of the factors not addressed by the district court." *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (quoting *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 171). Here, however, the district court analyzed each *Winter* factor. Because the district court's finding as to the irreparable harm prong is not challenged, and its conclusion as to the likelihood of success on the merits prong was correct, we need not evaluate the merged balance of equities and public interest factors.

---

[4] "A party waives an argument by failing to present it in its opening brief or by failing to 'develop its argument'—even if its brief takes a passing shot at the issue." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015)) (cleaned up). Jensen's Opening Brief does not set forth any arguments about the *Pike* test. *See generally* Appellant's Br. (ECF No. 18). Accordingly, Jensen has waived the arguments in her Reply Brief regarding the *Pike* test. *See* Reply Br. (ECF No. 23) at 24–28.

Even if we were to consider Jensen's *Pike* arguments, her claim would still fail. The in-state institution criterion does not place an undue burden on out-of-state actors for the same reasons the criterion is not discriminatory. Because "[s]tate regulation that applies equally to in-state and out-of-state interests does not offend the Dormant Commerce Clause," her arguments fail to establish a likelihood of success as to this claim. *N. Va. Hemp and Agric., LLC v. Virginia*, 125 F.4th 472, 497 (4th Cir. 2025).

IV.

For the reasons explained above, the district court's denial of the preliminary injunction is

*AFFIRMED.*